Case number 12-5511, Edward Minick v. Metro Gov of Nash and Mailena Mason. Court order is not to exceed the time limit prescribed in this letter. Thank you, Your Honor. Thank you. Good morning, Your Honors. Rebecca Blair on behalf of the appellant, Mailena Mason. I'd like to reserve three minutes for rebuttal. Your Honors, this case arises out of an alleged use-of-force incident that occurred in Nashville at the Nashville General Hospital between the deceased Michael Minick and four Davidson County police officers on May 30, 2012. It allegedly resulted in life-ending injuries to Mr. Minick. Ms. Mason, the appellant, was employed by Nashville General Hospital as a unit secretary to the medical staff and was stationed on the seventh floor of the hospital known as the lock-up unit where prisoners and pretrial detainees such as Mr. Minick were treated. Ms. Mason was not alleged to have been present during the use-of-force incident giving rise to the complaint, nor to have had any responsibility for the care of Mr. Minick. The only allegation in the complaint regarding... If we agree with you that there was an inadequate complaint under Twombly and Iqbal, doesn't that just give the district court the opportunity to allow an amendment which then could include all the facts that are laid out in the briefs? Presumably, I guess it could. And theoretically, I guess that is the same posture that this case was in when the nurses were dismissed from the action. But as this court well knows, plaintiffs are required to meet their burden with regard to pleading and to allege sufficient facts to state a claim for relief. Well, your friend on the other side didn't argue it. There is case law in this circuit, is there not, that says that a district court can treat the briefing as a constructive amendment to the complaint for purposes of assessing whether or not there are sufficient facts. So I guess what I'm trying to understand is if you're just asking us to go through an exercise here to say, well, this complaint doesn't have enough, when we know that they can go back and add all those facts that are in the brief that the trial court was clearly aware of. Well, if we, and the trial court did state that it was disregarding those additional facts, but if we look to those additional facts, because we all are aware of them now, as your Honor is suggesting, it's the appellant's position that the matter should still be dismissed, that the plaintiffs still, even with those additional facts that were raised in the briefing, had they been properly alleged at the complaint, that we still would not have a facially plausible claim under the 14th Amendment. And if we could turn to those facts specifically, the additional facts that are raised in the complainant's complaint, in fact, the appellant would suggest demonstrate not that Ms. Mason acted with deliberate indifference for the safety of Mr. Minnick, but instead acted reasonably. The additional facts that have been raised in the briefing are that she heard a noise coming from the patient's room, she went to the patient's room, knocked on the door, asked if everything was okay, and was told by a deputy that everything was fine. What else would a unit secretary with no responsibility for this patient be expected to do other than to go knock on the door when they heard a noise, be told by the security officers, which is presumably who she would have called had there been a problem, told that there was no problem, and then also reported that information to the nurse who was charged with the patient's care as soon as the nurse was relieved from responsibility for caring for another patient. So, if anything, if we were to take the additional facts, had they been properly pled, and if the court wants to consider those under the case law that Your Honor is referencing, the appellant would submit that all of those additional facts support the finding that there was not any act of deliberate indifference, that her actions were reasonable, and that there's not... The allegation is that she said everything okay, they said everything's okay, she continued to hear the disruption of the noise, and she saw that, in fact, his call light was unplugged. I mean, there's two different levels here. One is, is it enough to get by 12B6, and then the other is, then what do you do with it by way of the qualified immunity analysis? So which argument are you really making, that they haven't stated a claim, or that even if they could arguably have stated a plausible claim, there is a separate qualified immunity analysis that needs to be done? I'm making both arguments. Respectfully, Your Honor, it's the appellant's position that they haven't stated a claim and that they can't state a claim, even under the additional facts that have been alleged. But even if we assume that they have stated a claim, I think the quality... They haven't shown a violation of a clearly established right? Well, that's what I'm moving to. That's with regard to the qualified immunity defense. The appellant would state that they have not shown that there was a violation of a clearly established right. They have not cited a single case, nor have we been able to find a single case, where a unit secretary, whose responsibility is to provide support to the medical staff, was found to have some responsibility to a patient under these circumstances. We found no case on point. Does it have to be that specific? Didn't Judge Merritt in his decision specifically say that the nurse in that case was on notice because of the cases that dealt with police officer responsibility? Are you referring to the Durham case, Your Honor? Yes. Well, there are a lot of distinguishing factors between the Durham case and this particular case. In the Durham case, as Your Honor will recall, the nurse had initiated the, I guess, the confrontation or the events that led to the confrontation with the patient by instructing him to clean up after himself. She was also present for and observed the interaction with the officers, and one of the officers at least was even acting under her instruction to get the patient under control. That's an entirely different situation than what we have here, where Ms. Minnick was not a nurse, did not have any interaction with the patient, did not actually observe with her own eyes what was going on, what was going on was happening behind doors, and she did act to check on the patient and did act to report that something was going on to the nurse who was responsible for the patient. So while maybe it doesn't have to be the clearly established right, maybe it doesn't have to be exactly on point fact by fact, I think the case law is clear that there has to be, in order to put the state actor on notice that they had a responsibility, there has to have been some pattern, and I don't think the Durham case, respectfully, is enough to put the state actor on notice. Is the clearly established right issue even right before us? I mean, if there is, in fact, a plausible claim for relief under 12B6, doesn't the district court have the discretion to say that because the question of a clearly established right is fact specific, that to defer that determination for some period of time while there is discovery? Certainly, I think that the district court does have discretion in that regard, although, again, we would argue to your honors this morning that based on the facts as we know them and that are in the record, that it would be inappropriate to require Ms. Mason to continue through the discovery process. As your honors will know, qualified immunity not only entitles the defendant, state actor, to protection from liability, but also from the entire litigation process and from the discovery process, and there are certainly appellate opinions and Supreme Court opinions that emphasize the fact that the clearly established law element is there and should be enforced to prevent a litigant such as Ms. Mason from having to go through even the discovery process. But there is a lot of case law from this circuit saying that the trial court has the discretion to allow that determination to be made at the summary judgment stage as long as it's made at a relatively early stage. I would agree that there is case law in that context. And this judge never made a determination that there was a clearly established right. She only made the determination that there was a plausible claim as to violation of a clearly established right. She did. And, in fact, the ruling as I read it states that she was relying just on the fact as pled, not even on the additional facts that are in the briefing. And those facts as pled state that Ms. Mason informed a nurse that there was something going on in the patient's room and that the call light had been pulled. And the situation with the call light, as I understand the facts, is what prompted this secretary to walk down the hall and ask the deputy. Didn't that precede everything? That's what prompted her to go down the hall and ask the deputy what's wrong? Because the call light had been, she could tell something was wrong with the call light. I would have to refer back to that specific factual summary, Your Honor, that's included in the plaintiff's brief. I can't, off the top of my head at this moment, I can't. I don't want to misrepresent that to you. I think I might have read it in your brief, counsel. The other brief doesn't tell me much of anything. But in your brief, I think there was some acknowledgment that it was the call light. It matters not, except in terms of the timing and the expectation and the plausibility that she could have exhibited. Well, and I would direct, Your Honor, then to the third prong of the qualified immunity analysis, which then takes us back to whether she acted. You're on qualified immunity, and I'm still on the initial, even with the extra facts, whether or not plausibility in the Twombly sense has been shown. But I would suggest that all of those factors overlap, because we end up looking back again at whether she acted with deliberate indifference and whether she knew or had reason to know of a substantial risk of harm to the patient. Was in a position to do something about it. Exactly. And what else would she have done under these circumstances, under all the facts that are before the court that the plaintiff has put out there under any context? There were four security officers with the patient, one of whom assured her that everything was under control, and she reported that something was going on to the nurse responsible for the patient. So what else would a secretary do in that context? Thank you, counsel. Thank you. My name is Dan Hart. I'm from Morristown, Tennessee, and this is my first opportunity to appear before you, Your Honors, and I thank you for it. We hear a lot of talk on this case about qualified immunity. In your brief, you instead discussed sovereign immunity. Sovereign immunity? In your brief, yeah. I don't know what's said. Okay, I'm just noticing that. I wish it didn't show that. But I think the court understands that that's what we meant, I hope. And Judge Trauger ruled correctly that there's been no discovery where we would get information like the questions that opposing counsel raises. How, since they're on the other side, how are we to know exactly what happened? We do know that this caseworker, this secretary, did nothing. On her own account, she did nothing to help this young man. And can you, I mean, you haven't done it in your brief, detail what you would have had her do differently. You want me to do that now? Well, I suppose it probably would help, I don't know, if you care to. She could have gotten a baseball bat and hit the man in the head. Excuse me, counsel, what would be the basis for your claim that she had any kind of either duty or authority to intervene in a situation of that type? Because one thing, the unit secretary sits there in front of a TV camera and observes what goes on on her floor. Inside the closed door? The room had a closed door. It's supposed to, there's more to it. Without a camera, nobody said anything about a camera. In Durham there was a camera, but in this case we didn't hear anything about a camera. We understand that there was a camera, but we've not yet received it. We've asked for it, but we've not yet received it. We wrote a spoliation letter when it was first reported to us that it should be kept, but we've never seen it. Why didn't you move to amend your complaint? I mean, if there were all these other facts that you put in your brief, why didn't you put them in your complaint? I, during that period of time that that went on, I wasn't in my office every day like I should have been because of health reasons, and I relied on someone else to do more than I should have. And that's the only answer I can really give you. How much discovery has there been with respect to these issues to date? None. Why is that? Well, for one thing, it seems like I have in my mind that Judge Trauger at one point said something about no discovery. No discovery until she had ruled on motion. Well, she ruled on the motions long before you ever filed this appeal, right? We wouldn't be up here if she hadn't ruled on the motion. Right. But you haven't conducted any of the discovery that she authorized you to conduct? No, we haven't. But we need to. Even as to the officers that were there and allegedly involved in the beating? The strangest thing happened about that. Right after we wrote a representation letter, the defendant showed up with the tapes and pictures that they had taken that bolsters our case. And, of course, that gave us a lot of information. It would go over hundreds of pages. This would be pictures of what? Pictures of the decedent. This is what he looked like after the beating? And did. Okay, now this doesn't go to the question that this court confronts today, does it? No, Your Honor. Okay. I was just answering the question. As I understand it, immunity is to keep spurious claims off of state workers so they can do their duties without being harassed for frivolous claims. Well, it's not just to keep frivolous claims. It is to protect state workers, state employees, state officials from being sued for not doing something that they didn't have any reason to believe they should have done, for example, which wouldn't fall in the category of a spurious or frivolous claim necessarily, but it would certainly fall into the category of something that no reasonable official or employee in that person's situation would have understood he or she had a duty to do. And that's where I'm having the most trouble with your case here because nothing that I see gives any basis to think that a unit secretary, I mean, in your pleading you haven't given us any rundown of duties. You haven't cited anything that would indicate that a unit secretary has any kind of authority to do anything except what a doctor tells her to do. We don't even know that. But we're entitled to discovery and we want to discover the nurse in order to further evaluate the case and do what we need to do and don't see of any reason why we're not doing some discovery. And keep in mind, the lady that's complaining about this immunity is alive and well. Right, but a qualified immunity appeal doesn't deprive the lower court of jurisdiction to go forward with the case, and the lower court gave you the opportunity for discovery. I expected you to stand up here and tell us everything you found out since then that you could put into a complaint if we were to send it back. Well, I'd like to be able to tell you that. But we haven't done the discovery that we're authorized to do. We're going to. And yet you have this nurse secretary sitting there subject to a lawsuit when you could be figuring out whether or not that's a legitimate thing to do. Yes, Your Honor. I can't glamorize my position. As hard as I try to make myself look good, I'm not doing it. And I understand. But we believe that with some short depositions that we'll be able to have the case in a position to be tried. I have one other factual question. Is it the case, based on the facts that you do have, that whatever did happen here, there was at most 15 minutes between the time the actual nurse left the room to go and look after other patients, and that nurse was advised by the secretary that there might be a problem in the room of your client's decedent? I'm not sure about the time element, the 15 minutes, but I know it was a pretty short while. All right. And the nurse secretary, as far as I know, never went into the room, never stuck her head in the room. The deputy met her at the door, as I understand the facts from your complaint. She spoke to the deputy at the door. Do you have any reason to tell this court that she went in the room? No. Okay. No, that's what I'm telling you. I don't think she did go in the room. I think the deputy talked to her across the room. We talked to her at the other station. Anything further? No. Thank you, Your Honor. Thank you. Any further rebuttal? Your Honor, first, to address further and respond to Judge Cook, your question a few minutes ago about the factual timing of events, I certainly didn't mean to avoid that question, but I did not want to state anything incorrectly, misrepresent to this court the factual timing. In my quick re-review of the briefs, I still do not see, and therefore am not clear in my own mind, based on the plaintiff's allegations that the . . . The light was the triggering event. Whether or not that it was. What I see from the brief of the appellee, and that I think that we picked up on again, is in the additional facts that are suggested, it states that while awaiting the Deputy Defendant's assistance, Unit Secretary Mason could hear a lot of noise and ruckus coming from the lock-up unit, more specifically in the direction of Mr. Minnick's room, left her desk and proceeded to the lock-up unit, was met at the door by Deputy Defendant Christopher Foster, inquired as to what was happening and if there was anything wrong. Deputy Foster responded to her that everything was fine. Ms. Mason then returned to her desk, continued to hear a ruckus coming from the room, and did not go back to the room. I've read all that. Okay, I was just . . . And I can't tell from that where that fits in with the call light, based on their allegations. And so . . . But in any event, again . . . But do you agree with me that the trial court did not rule on the qualified immunity issue? So the only question before us is the 12B6 question. I mean, I know your right to appeal was purportedly from the qualified immunity determination, but she didn't actually make a qualified immunity determination. She just said that there was a plausible allegation in the complaint that could give rise to a claim as to which there might not be qualified immunity. Well, and then also, as the appellant has taken that ruling, also went on to find that there were disputed issues of fact suggested at this point to deny the qualified immunity defense. And we would suggest to your honors that that is simply not the case, and that when we look to the facts, all the facts that are in the record, however they got there, that we simply do not have a clearly established law, which is what would be required to deny the qualified immunity defense to Ms. Mason. We simply do not have that here. So essentially, are you saying if it wasn't explicitly ruled on, in your view, since you raised it, it was denied? It was denied, yes, your honor. Thank you. Thank you. The case will be submitted. Clerk, we'll call the next case.